IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JOHN MARTIN, RHONDA BREWER,
DAVID MCCOY, MARY O'GRADY,
and MARISSA ELYSE SANCHEZ,

      Plaintiffs,

v.                                                      No. CIV 18-0031 RB/JKR

CITY OF ALBUQUERQUE,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the City of Albuquerque's Motion to Exclude "Rebuttal" Expert Testimony of Dr. David Ragland, filed on March 21, 2019. (Doc. 77.) For the reasons explained in this Opinion, the Court will **deny** the motion.

**I.    Background**

Plaintiffs have sued the City to challenge the constitutionality of Ordinance O-17-51, now codified at Albuquerque Code of Ordinances § 8-2-7-2 (the Ordinance). (*See* Docs. 1; 3-A.) The City purportedly enacted the Ordinance as part of its "compelling interest in adopting laws that help promote safety" for pedestrians on roadways and medians. (*See* Doc. 3-A at 3.[1]) The Ordinance "focus[es] on pedestrian activities that take place in areas that were not specifically designed for use by pedestrians or that do not otherwise include adequate safety accommodations for pedestrian-vehicle interactions" and prohibits activities such as standing on, using, occupying, congregating on, or interacting with occupants of motor vehicles on roadways, exit or entrance ramps to roadways, or medians that are "not suitable for pedestrian use . . . ." (*Id.* at 3–4.)

On April 12, 2018, the parties submitted a Joint Status Report and Provisional Discovery

---

[1] The Court cites to the exhibit's internal pagination.

Plan (the JSR). (Doc. 26.) In the JSR, the parties proposed two deadlines relevant to this motion: "Initial [expert] reports from Plaintiffs and Defendant by September 4, 2018. Rebuttal [expert] reports from Plaintiffs and Defendant by October 2, 2018." (*Id.* at 11.) United States Magistrate Judge Karen B. Molzen entered an Order Setting Case Management Deadlines and Discovery Parameters on April 18, 2018. (Doc. 30.) Pursuant to the parties' requested deadlines, Judge Molzen set a deadline of September 4, 2018, for both Plaintiffs' and Defendant's Rule 26(a)(2) initial expert disclosures; set a deadline of October 2, 2018, for any rebuttal expert reports; and added an additional deadline of October 18, 2018, for the termination date of expert discovery. (*Id.* at 2.) Neither party objected to these deadlines. In a footnote to the initial disclosure deadline, the Court specified that the "[p]arties must disclose the names of all expert witnesses, including treating physicians, the subject matter on which the experts will present evidence, and a summary of the facts and opinions to which the experts are expected to testify by this date." (*Id.* at 2 n.2.)

The Court has since granted three extensions to the discovery deadlines. On July 25, 2018, the parties filed a Joint Motion to Extend and asked the Court to move the initial expert disclosure deadline to November 5, 2018, the rebuttal expert report deadline to December 2, 2018, and the termination date for expert discovery to December 17, 2018. (Doc. 43 at 2.) Judge Molzen granted the parties' request. (*See* Doc. 44.) On September 11, 2018, the parties filed a second Joint Motion to Extend and asked the Court to move the initial expert disclosure deadline to January 7, 2019 (Plaintiffs) and January 9, 2019 (Defendant),[2] the rebuttal expert report deadline to February 4, 2019 (both parties), and the termination date for expert discovery to February 18, 2019. (Doc. 54

---

[2] The parties agree that their original intent was to have simultaneous deadlines for the initial expert disclosures, and splitting the initial disclosure deadline dates in both this motion (Doc. 54) and the next (Doc. 56) was a scrivener's error. (*See* Docs. 80 at 4 n.1; 96 at 1.) Apparently, neither party noticed the error, as neither ever moved to amend the deadlines to make them simultaneous again.

2

at 2.) Judge Molzen granted the motion. (Doc. 55.) On November 16, 2018, the City sought a third, unopposed, extension of certain deadlines. (*See* Doc. 56.) The City (with no objection from Plaintiffs) asked the Court to move the initial expert disclosure deadline to February 7, 2019 (Plaintiffs), and February 11, 2019 (Defendant), the rebuttal expert report deadline to March 4, 2019 (both parties), and the termination date for expert discovery to March 21, 2019. (*Id.* at 2.) Again, Judge Molzen extended the dates to those requested in the City's motion. (Doc. 58.) These are the current, operative deadlines.

Neither party identified any anticipated expert witnesses in the JSR.[3] (*See* Doc. 26 at 6, 9.) Nor did either party identify any expert witnesses in their June 2018 responses to discovery requests (at least those identified in the briefing on this motion). (*See* Docs. 77 at 6 (citing Doc. 78 ¶¶ 5, 7 (internal citations omitted)); 80 at 11 (citing Doc. 81 ¶¶ 15–16).)

Plaintiffs' outside counsel, Mr. Kevin P. Martin, has been involved in five other lawsuits around the country that have challenged similar municipal ordinances. (Doc. 81 ¶ 2.) Neither the plaintiffs nor the municipal defendants in these other lawsuits disclosed an expert witness to support meeting their burden of proof. (*Id.* ¶ 3.) Mr. Martin suspected that the City might disclose an expert in this case, because of "the attention the City had paid to the sequencing of expert disclosures in negotiating the JSR, [and] also" because the City commissioned (and the Ordinance referenced) a study conducted by the University of New Mexico "analyzing the ten most dangerous intersections in Albuquerque." (*See id.* ¶ 12; *see also* Doc. 3-A at 2–3.) Thus, Plaintiffs identified a potential rebuttal expert, David Ragland, Ph.D., MPH. (*See* Doc. 81 ¶ 13.) Plaintiffs assert that they initially "sought out Dr. Ragland based on his expertise in traffic-safety and transportation

---

[3] The City did give notice "that it anticipated receiving testimony from a '[t]o-be determined representative of the City of Albuquerque Department of Municipal Development[,]" but it did not identify that witness as an *expert* witness. (Doc. 26 at 9.) In fact, in the subsection immediately following, the City gave notice that it may call "[a]ny as yet unidentified *expert* witness(es)." (*Id.* (emphasis added).)

3

issues" in May 2018. (Doc. 80 at 5 n.5.) In June and August 2018, the City produced over 5,000 pages of crash reports from the Albuquerque Police Department. (*Id.* at 5.) To help sort through this information, "Plaintiffs engaged Dr. Ragland and his research assistants at UC Berkeley to sort through the reports, enlisting their help in categorizing the reports and identifying any arguably relevant reports for use during depositions and at trial." (*Id.* (citing Doc. 81 ¶ 19).) Plaintiffs have paid Dr. Ragland $18,000 for his and his research assistants' work. (Doc. 81 ¶ 19.)

Plaintiffs did not provide initial expert disclosures on February 7, 2019. (*See* Doc. 77 at 6.) "On February 11, 2019, the City disclosed Melissa Lozoya, P.E.[,] as its Rule 26(a)(2)(C) expert." (*Id.* at 5 (citing Doc. 77-A).) "Ms. Lozoya is a registered Professional Civil Engineer and currently works for the City in the Department of Municipal Development [(DMD)] as the Deputy Director." (Docs. 77-A at 1;[4] 77-A-A.) On March 4, 2019, Plaintiffs disclosed Dr. Ragland as their rebuttal expert. (*See* Doc. 77 at 6; *see also* Doc. 77-B.) The City argues that Plaintiffs should have disclosed Dr. Ragland as an affirmative expert according to the initial expert disclosure deadline, as his report does not truly rebut Ms. Lozoya's opinions. (*See* Doc. 77.)

**II. Analysis**

The City argues that the Court should exclude Dr. Ragland's testimony and report for two reasons: (1) because "[t]he Court's scheduling orders did not contemplate disclosure of rebuttal experts for the first time on the rebuttal reports deadline[;]" and (2) "because it was untimely disclosed without sufficient justification and" prejudices the City. (*Id.* at 9, 10.)

**A.  The parties helped fashion and approved the deadlines in the scheduling order.**

The City first argues that under the Court's scheduling order and subsequent deadline extensions, Plaintiffs were required to disclose Dr. Ragland on February 7, 2019—the initial expert

---

[4] The Court cites to the exhibit's internal pagination.

4

disclosure deadline. (*See id.* at 9–11.) The City emphasizes a footnote in the scheduling order, which states that "[p]arties must disclose the names of *all expert witnesses*" by the initial expert disclosure deadline. (*Id.* at 2 (citing Doc. 30 at 2 n.2), 10.) The City argues that this inclusive language means the Court must have intended for the parties to also disclose the names of rebuttal experts, not just affirmative experts, by the initial expert disclosure deadline. (*See id.* at 2–3, 10–11.) Yet, in that same footnote, the Court states that "[e]xperts who are retained or specifically employed to provide expert testimony must also submit an expert report by this date." (*See* Doc. 30 at 2 n.2.) Clearly this footnote does not refer to both affirmative and rebuttal witnesses, as such a statement would be incorrect if it referred to both types of expert witnesses, because there is a separate deadline for rebuttal expert reports. (*See id.* at 2.)

The City next contends that because this District's Local Rules require 14 days' notice for a deposition, the two weeks remaining between the rebuttal report deadline and the termination date for expert discovery was not enough for the City "to react to a 'rebuttal' expert disclosed for the first time on the rebuttal report deadline." (*Id.* at 10–11 (citing D.N.M. LR-Civ. 30.1).) The Court finds this argument unpersuasive, as the parties knew of the short turn-around on this deadline since the first scheduling order was filed in April 2018. (*See* Doc. 30.) Moreover, the parties tacitly agreed to this deadline when they filed three motions to extend and failed to request more time between the rebuttal report deadline and the termination of expert discovery. *See Rothenberg v. Standard Ins. Co.*, No. 11-cv-01906-WYD-KMT, 2012 WL 2126846, at *2 (D. Colo. June 12, 2012) (denying motion regarding expert deadlines where the moving party "contributed to, reviewed, and approved" the "scheduling outlined in the Scheduling Order").

Finally, the City notes the distinction in the scheduling order "between the initial expert *disclosure* deadlines and the deadline for rebuttal expert *reports* . . . ." (Doc. 77 at 11.) The City

argues that "had the Court intended to allow disclosure of rebuttal experts for the first time on the rebuttal expert reports deadline, the Court likely would have described the deadline as a rebuttal expert *disclosure* deadline." (*Id.*) This argument is also unavailing. Judge Molzen included a rebuttal deadline at the parties' request. If the parties needed additional clarity about the wording of the order, the parties had several opportunities to seek different wording.

### B. Dr. Ragland's testimony is proper rebuttal testimony.

The City also argues that Dr. Ragland's report is not truly a rebuttal report, but instead is "an affirmative expert report in disguise." (*Id.*) Thus, the Court must determine whether Dr. Ragland's "expert report exceeds the scope of proper rebuttal testimony." *E.E.O.C. v. JBS USA, LLC*, No. 10-CV-02103-PAB-KLM, 2013 WL 3302429, at *6 (D. Colo. July 1, 2013). "A witness designated as a rebuttal expert witness, is a witness 'intended solely to contradict or rebut evidence on the same subject matter identified' in the expert report of another party." *Id.* (quoting Fed. R. Civ. P. 26(a)(2)(C)(ii)) (citing *Lindner v. Meadow Gold Dairies, Inc.*, 249 F.R.D. 625, 636 (D. Hawaii 2008) ("holding that individuals designated only as rebuttal experts could present limited testimony, could not testify as part of a party's case-in-chief, and would not be allowed to testify 'unless and until' the experts they were designated to rebut testified at trial"); *Johnson v. Grays Harbor Cmty. Hosp.*, No. C06–5502BHS, 2007 WL 4510313, at *2 (W.D. Wash. Dec. 18, 2007) ("finding that experts designated as rebuttal witnesses would 'be permitted only to offer rebuttal testimony at trial'")). Rule 26(a)(2)(D)(ii) "makes clear that a rebuttal expert's testimony must relate to and rebut evidence or testimony on the same *subject matter* identified by another party under Rule 26(a)(2)(B) or (C)." *Id.* (quoting *Bleck v. City of Alamosa*, No. 10-cv-03177-REB-KMT, 2012 WL 695138, at *4 (D. Colo. Mar. 5, 2012) (internal citations omitted)).

Ms. Lozoya's report addresses engineering and "roadway design considerations that aim to minimize pedestrian-vehicle conflicts and how [the Ordinance] specifically furthers that goal." (Doc. 77-A at 1.) The City contends that Dr. Ragland's report does not truly rebut Ms. Lozoya's disclosure because Dr. Ragland does not specifically discuss "new, unforeseen facts that came out for the first time in the Lozoya Disclosure." (*See* Doc. 77 at 12.) Instead, based on his analysis of the City's crash reports, "Dr. Ragland concludes that the collision reports are 'the actual data regarding vehicle-pedestrian crashes in Albuquerque' and that the reports 'do not support Ms. Lozoya's opinion that the Ordinance is needed in order to reduce the incidence of vehicle-pedestrian conflicts.'" (*Id.* at 7 (quoting Doc. 77-B at 5; citing Doc. 77-B at 2–3, 6).) The City asserts that because Dr. Ragland does not "refute any of the traffic engineering principles set forth in [Ms. Lozoya's] disclosure[,]" he is not a rebuttal expert witness, but an affirmative expert witness who should have been disclosed at the earlier deadline. (*Id.* at 7–8, 12–13.) It is clear that the Ragland Report is not rebuttal, the City argues, because he "offers several alternatives to the Ordinance that he claims would help prevent pedestrian injuries." (*Id.* at 13 (citing Doc. 77-B at 13–16).) These "suggestions constitute new material that [P]laintiffs should have introduced in an affirmative expert disclosure." (*Id.* (citing *R&O Constr. Co. v. Rox Pro Int'l Grp., Ltd.*, No. 2:09-cv-01749-LRH-LRL, 2011 WL 2923703, at *5 (D. Nev. July 18, 2011) (noting that "[a] rebuttal expert report is not the proper place for presenting new arguments") (internal quotation omitted)).)

Plaintiffs argue that Dr. Ragland is not an affirmative expert, primarily because the City has the burden of proof on the issue of whether the Ordinance is narrowly tailored to advance a significant government interest.[5] (*See* Doc. 80 at 1, 11 ("[t]he City has the burden of proof" to

---

[5] While the City replies that Plaintiffs carry their own burden to show that "the restrictions affect protected expression in a traditional public forum" (Doc. 96 at 6 (quoting *ACLU of Colo. v. City & Cty. of Denver*, 569 F. Supp. 2d 1142, 1161 (D. Colo. 2008))), the City does not dispute that Ms. Lozoya's opinion is relevant to the City's, not to Plaintiffs', burden.

7

show that the Ordinance's restrictions "(a) serve a significant government interest; (b) are narrowly tailored to advance that interest; and (c) leave open ample alternative channels of communication") (quoting *Doe v. City of Albuquerque*, 667 F.3d 1111, 1131 (10th Cir. 2012) (quotation marks omitted)).) "[I]n most cases the party with the burden of proof on an issue should disclose its expert testimony on that issue before other parties are required to make their disclosures with respect to that issue." Fed. R. Civ. P. 26(a)(2), advisory committee's note to 1993 amendment. In that vein, Plaintiffs assert, they waited for the City to produce an expert report on this issue, then submitted their "rebuttal report identifying deficiencies in the City's proffer." (Doc. 80 at 12 (citing *Harvey v. THI of N.M. at Albuquerque*, No. 12-cv-727 MCA/RHS, 2014 WL 12796898, at *5 (D.N.M. Mar. 31, 2014) (concluding it was "only logical" that the plaintiffs disclosed a rebuttal expert witness after the defendants disclosed the affirmative expert witness)).)

Regarding the content of Dr. Ragland's report, Plaintiffs argue that Dr. Ragland simply points out why Ms. Lozoya's opinions about how the Ordinance's restrictions "further[] the goal of avoiding dangerous pedestrian-vehicle conflicts" are not supported by the City's own data. (*Id.* at 13 (quoting Doc. 77-A at 4–5).) Plaintiffs note that under relevant precedent, "the Ordinance must be narrowly tailored to the *actual* facts, not to hypothetical concerns unmoored from the evidence." (*Id.* at 14 (citing *Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 664 (1994) ("explaining that to survive this constitutional scrutiny, the government must 'demonstrate that the recited harms are *real, not merely conjectural,* and that the regulation *will in fact* alleviate these harms in a direct and material way'") (subsequent and internal citations omitted)).) The City replies that because Dr. Ragland relied on facts outside of Ms. Lozoya's disclosure, his opinion is not proper rebuttal. (Doc. 96 at 10 (citing *R&O Constr.*, 2011 WL 2923703, at *2 ("If the purpose of expert testimony is to contradict an expected and anticipated portion of the other party's case-in-chief,

8

then the witness is not a rebuttal witness or anything analogous to one") (internal quotations omitted)).)

The issue of whether Dr. Ragland should be classified as an affirmative or a rebuttal expert is a close one. As Plaintiffs asked Dr. Ragland to begin his analysis well before the City disclosed Ms. Lozoya, it is clear they anticipated that the City's crash reports could cut against an argument that the Ordinance's restrictions are narrowly tailored to the City's interest. However, as the City has the burden on that issue, Plaintiffs were not required to offer expert testimony first. The Court finds that Dr. Ragland's opinion "on the extent to which the Ordinance's median, ramp, and physical-interaction restrictions effectively address the safety concerns purportedly underlying the Ordinance" (Doc. 77-B at 4) is sufficiently responsive to Ms. Lozoya's opinion that the Ordinance's prohibitions, "[f]rom a road design perspective," further "the goal of minimizing pedestrian-vehicle conflicts" (Doc. 77-A at 5) to qualify as rebuttal testimony. Dr. Ragland is appropriately classified as a rebuttal expert. Because the City had several opportunities to modify and/or clarify deadlines in the scheduling order, its arguments about prejudice and surprise ring hollow. Accordingly, the Court will deny the City's motion to exclude Dr. Ragland's testimony. Dr. Ragland will not testify at trial, of course, unless the City first calls Ms. Lozoya to testify.

As the City will likely want to depose Dr. Ragland, the Court will impose the following deadlines. The parties shall depose Dr. Ragland no later than **Friday, May 31, 2019**.

Because briefing on the parties' motions for summary judgment will likely be complete before the parties depose Dr. Ragland, the Court will allow each party to file an omnibus surreply to all pending motions for summary judgment specifically addressing the Ragland Report, if necessary, no later than **Friday, June 7, 2019**. Each surreply shall not exceed 15 pages of argument

9

and 15 pages of exhibits. The Court will not consider any motions to exceed the page limits or extend these deadlines.

The Court hereby **vacates** the initial pretrial conference currently set for June 7, 2019, and **resets** it for **Tuesday, June 18, 2019, at 8:45 a.m.**

**THEREFORE,**

**IT IS ORDERED** that the City of Albuquerque's Motion to Exclude "Rebuttal" Expert Testimony of Dr. David Ragland (Doc. 77) is **denied**.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE