**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

**JOHN MARTIN, RHONDA BREWER,
DAVID MCCOY, MARY O'GRADY,**
and **MARISSA ELYSE SANCHEZ,**

       **Plaintiffs,**

**v.**                                  **No. CIV 18-0031 RB/JFR**

**CITY OF ALBUQUERQUE,**

       **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiffs brought this civil rights action to challenge an Albuquerque municipal ordinance that restricted pedestrian activities on or near roadways. Plaintiffs alleged that the ordinance "unconstitutionally infringe[d their] rights to exercise freedom of speech and expression in traditional public for[a] by restricting a substantial volume of constitutionally protected speech without adequate justification." (Doc. 1 ¶ 41.) After the close of discovery, Plaintiffs moved for summary judgment and argued that the City had failed to meet its burden to establish that the ordinance is a valid speech restriction under a First Amendment analysis. (*See* Doc. 147 at 5 (citing Doc. 89 at 22–25).) The City also moved for summary judgment in three separate motions, each arguing "discrete elements of the First Amendment analysis . . . ." (*See id.* (citing Docs. 91; 92; 93).) On July 18, 2019, this Court entered a Memorandum Opinion and Order[1] granting Plaintiffs' motion for summary judgment as to Subsections (B)–(F) of the ordinance and denying Plaintiffs' motion as to Subsection (A), and granting the City's motion for partial summary judgment as to Subsection (A) and denying the City's motions as to Subsections (B)–(F). (*See* Doc. 140 at 37.)

---

[1] The Court entered an Amended Memorandum Opinion and Order on August 5, 2019 (Doc. 147), but with the exception of one late July entry discussed in footnote 3 below, Plaintiffs do not seek any fees or costs incurred after the Court's original July 18, 2019 Opinion.

Plaintiffs now move pursuant to 42 U.S.C. § 1988(b), 28 U.S.C. § 1920, and D.N.M. LR Civ. 54 for an award of attorneys' fees and litigation expenses. (Doc. 149.) Plaintiffs request a total of $440,367.50 in fees and $7,107.47 in costs. The City agrees that Plaintiffs are the prevailing party for purposes of 42 U.S.C. § 1988, but it challenges the requested amounts based on its contention that the hourly rates are excessive, and that many of the claimed hours were redundant, excessive or unspecific. The City also asks the Court to reduce the amount awarded because the Court did not grant the Plaintiffs complete relief. Having considered the parties' arguments, exhibits, and relevant law, the Court will grant Plaintiffs' motion in part.

## <u>Discussion</u>

Under 42 U.S.C. § 1988(b), the prevailing party in a civil rights action such as this one is entitled to reasonable attorneys' fees. The prevailing party may also be entitled to its costs pursuant to 28 U.S.C. § 1920 and D.N.M. LR-Civ. 54. "A plaintiff who succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit is a prevailing party . . . ." *Case v. Unified Sch. Dist. No. 233, Johnson Cty., Kan.*, 157 F.3d 1243, 1249 (10th Cir. 1998) (internal quotation marks and citation omitted). The parties agree that Plaintiffs are the prevailing party under § 1988(b).

## I.     Attorneys' Fees

"To determine a reasonable attorneys['] fee, the district court must arrive at a 'lodestar' figure by multiplying the hours plaintiffs' counsel reasonably spent on the litigation by a reasonable hourly rate." *Id.* (quoting *Jane L. v. Bangerter*, 61 F.3d 1505, 1509 (10th Cir. 1995)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Id.* (quoting *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1201 (10th Cir. 1986)). "The prevailing party must make a good-faith effort to exclude

from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Jane L.*, 61 F.3d at 1510 (internal quotation marks and citation omitted). And "[h]ourly rates must reflect the prevailing market rates in the relevant community." *Id.* (internal quotation marks and citation omitted). "Finally, certain factors may cause the court to adjust a fee upward or downward, 'including the important factor of the "results obtained."'" *Tenorio v. San Miguel Cty. Det. Ctr.*, No. 1:15-CV-00349-LF-JHR, 2019 WL 2617998, at *2 (D.N.M. June 26, 2019) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

### A.    Reasonable Hours

Plaintiffs were represented by seven named counsel: from Goodwin Procter LLP, Mr. Kevin Martin, Ms. Jaime Santos, Mr. Gerard Cedrone, Mr. Martin Topol, and Mr. Christopher Herbert; and from the ACLU of New Mexico, Mr. Leon Howard and Ms. María Sánchez. (Doc. 150 at 2–3, 10.) Plaintiffs' counsel are not seeking compensation for several categories of work performed, although the hours for these categories may have been compensable: (1) travel time; (2) for more than one attorney's appearance at a deposition; (3) "motions on which they did not prevail or that were ultimately unnecessary"; (4) a portion of their team meetings (although they do seek fees for "meetings convened for a particular purpose[, ]such as deposition preparation, expert witness matters, and so forth"; (5) hours worked by paralegals, court procedures attorneys, and any Goodwin attorneys who are not listed as counsel of record; (6) any entry in which an attorney billed less than .5 hours on a particular day, and each attorney has capped his or her fee request to no more than 12 hours in a day; and (7) briefing of the fee request. (*Id.* at 8–9.)

Of the time remaining, Plaintiffs' seven attorneys seek compensation for a total of 1,669.6 hours. (*See* Doc. 162 at 7.) The City contends that the Court should reduce the number of total hours because many of the hours are redundant, excessive, and unspecific, and are therefore

unreasonable. (Doc. 158 at 5–11.) To determine whether the number of hours expended is reasonable, the Court must consider whether the "hours were 'necessary' under the circumstances." *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998). Factors the Court may consider include:

> (1) whether the tasks being billed "would normally be billed to a paying client," (2) the number of hours spent on each task, (3) "the complexity of the case," (4) "the number of reasonable strategies pursued," (5) "the responses necessitated by the maneuvering of the other side," and (6) "potential duplication of services" by multiple lawyers.

*Id.* (quoting *Ramos v. Lamm*, 713 F.2d 546, 554 (10th Cir. 1983), *overruled on other grounds*, *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 725 (1987)).

Plaintiffs' counsel "focus their practice [in part] on constitutional litigation and have developed specialized expertise in litigating First Amendment claims." (Doc. 150 at 3.) The ACLU has particular "expertise in constitutional matters[,]" and the Goodwin firm "has been extensively involved in litigating constitutional challenges to ordinances" like the one here over the past six years. (*Id.* at 4–5.) "Plaintiffs' counsel achieved efficiencies by leveraging their expertise in this case" by staffing their team with attorneys experienced in "First Amendment challenges and by relying on existing work product (*i.e.*, briefs filed by Goodwin in . . . other [First Amendment] cases) where reasonable." (*Id.* at 5.)

The City argues that in spite of this expertise, Plaintiffs seek 32% more hours[2] than the City's own two attorneys, who are claiming 1,131.3 hours and have no previous experience in First Amendment litigation. (Doc. 158 at 7.) Plaintiffs counter that they necessarily spent more time because they had to draft a complaint and a preliminary injunction motion, review voluminous

---

[2] Plaintiffs' hours (and the 32% figure) do not include an unspecified number of hours that Plaintiffs voluntarily excluded as described above. Plaintiffs assert, though, that the City has not disclosed how many hours the City Attorney's office expended, which would affect this comparison. (Doc. 162 at 4.)

discovery from the City, and gather facts regarding the ordinance's development and enactment—information the City already possessed. (Doc. 162 at 2.)

The City also contends that Plaintiffs' hours are duplicative because they had seven attorneys who billed multiple times for team communications and conferences, as well as for several attorneys to prepare and appear at the same depositions. (Doc. 158 at 7–9.) Plaintiffs respond that courts in this district have allowed fees billed for conferences between attorneys because "[c]areful preparation often requires collaboration and rehearsal." (Doc. 162 at 3 (quoting *Nieto v. Kapoor*, No. CIV 96-1225 MV/JHG, 2001 WL 37125028, at *7 (D.N.M. June 12, 2001)).) Further, Plaintiffs assert that because the Goodwin attorneys were working on this lawsuit *pro bono*, they could not devote 100% of their time to the matter "without any assurance of remuneration." (Doc. 162 at 4.)

Plaintiffs break down their hours as follows: Mr. Martin claims 89.9 hours, Ms. Santos claims 311.5 hours, Mr. Howard claims 23.7 hours (*see* n.3 *infra*), Ms. Sánchez claims 90.9 hours, Mr. Cedrone claims 364.3 hours, Mr. Topol claims 597.7 hours, and Mr. Herbert claims 191.3 hours. (Doc. 150 at 10.) The Court performed its own hours calculation and roughly divided the hours into: pre-litigation/complaint (134.47) hours; preliminary injunction (60 hours); discovery/general case management (332.967 hours); deposition work (384.367 hours); and summary judgment work (756.533 hours).[3]

The City offers three examples of duplicate entries. First, on January 24–25, 2019, three

---

[3] The total dollar amount claimed for each of these categories is roughly as follows: pre- litigation/complaint – $38,383.33; preliminary injunction – $16,600; discovery/general case management – $86,600.83; deposition work – $105,425.83; and summary judgment work – $192,876.67. The Court acknowledges the slight discrepancies (1.263 hours and $484.84) between its numbers and Plaintiffs' numbers, which are likely due in part to the fact that one attorney recorded time in minutes and the rest in tenths of an hour. Additionally, the Court notes that Mr. Howard billed 0.3 hours on July 19, 2019, regarding a motion to clarify and an appeal. (*See* Doc. 152-A at 2.) Because no other attorney included hours worked after the Court's original July 18, 2019 Opinion, the Court omitted this entry from Mr. Howard's hours calculation.

attorneys billed "for correspondence and conferences with one another regarding the City's proposal to stay the case." (Doc. 158 at 8 (citing Doc. 151-A at 18).) The Court does not find this example unreasonable. Next, the City points to May 29, 2019, when five attorneys billed for a conference about an expert deposition. (*Id.* (citing Docs. 151-A at 29; 152-A at 1).) The Court will address the City's concerns about this example below when it reduces the hours awarded for deposition work. Other than these two examples, the City does not point to any other instances in which Plaintiffs' counsel unreasonably billed for correspondence or conferences.

The parties took 14 depositions (12 fact witnesses and 2 expert witnesses). According to the Court's calculations, Plaintiffs' counsel spent 384.367 hours ($105,425.83) on these depositions—over 27 hours per deposition. Despite Plaintiffs' assertion that "preparation for these depositions required fact-intensive review of voluminous discovery materials produced in no discernible order by the City" (Doc. 162 at 5), the Court did not include entries purely detailing discovery into its calculation for depositions. (*See*, *e.g.*, 151-A at 11 (the Court counted all August 2018 entries (32.3 hours) listing review of the City's discovery documents under the category of discovery).) It does not appear that any deposition took more than six hours, and at least one lasted less than one hour.[4] The Court finds that Plaintiffs' counsel have claimed an unreasonably high number of hours for these depositions. Consequently, it will reduce Plaintiffs' compensation to a total of 15 hours (preparation and attendance) for each fact witness and 20 hours for each expert for a total of 220 hours, a 42.8% reduction in the requested hours. Thus, the Court will reduce the

---

[4] (*See*, *e.g.*, Docs. 162 at 5 (admitting that the 30(b)(6) witness depositions took no more than half a day each; 151-A at 14 (09-11-2018 entry listing 1.3 hours for Sanchez deposition and 0.4 hours for O'Grady deposition); 151-A at 14 (09-13-2018 entry listing 2.3 hours for Lewis deposition); 151-A at 14 (09-13-2018 entry listing 3.3 hours to prepare for and attend Chavez deposition); 151-A at 19 (01-29-2019 entry listing 3.5 hours for McCoy deposition) and (01-29-2019 entry listing 4.8 hours to prepare for and depose Deputy Chief Medina); 151-A at 20 (01-30-2019 entry listing 3.9 hours for Melendrez deposition and 2.7 hours for Brewer deposition) and (01-31-2019 entry listing 5.4 hours to prepare for and attend Hertz deposition) and (01-31-2019 entry listing 2.8 hours for Jones deposition); 151-A at 29 (05-23-2020 entry listing 5.1 hours to prepare for and depose Mr. Ragland); 152-A at 3 (03-18-2019 entry listing 5.75 hours for Lozoya deposition).)

dollar value requested by 42.8% or $45,122.26.

Finally, the City complains that on June 18, 2019, four attorneys billed to attend a summary judgment hearing.[5] (Doc. 158 at 8 (citing Docs. 151-A at 31; 152-A at 1, 3).) The Court finds that on a more global level, the 756.533 hours Plaintiffs claim for summary judgment preparation and argument is excessive. Plaintiffs' counsel argue that part of these hours were necessitated by the City's decision to file three summary judgment motions and amend the ordinance on the eve of the summary judgment hearing. (*See* Docs. 150 at 11; 162 at 9.) Neither party points the Court to any helpful guidance on what number of hours is reasonable for a team of attorneys to spend at the summary judgment stage. In *Fox v. Pittsburg State University*, the court found that plaintiff's counsel reasonably spent 71.1 hours drafting a response to a 40-page motion for summary judgment. 258 F. Supp. 3d 1243, 1263 (D. Kan. 2017). In *Ysasi v. Brown*, the court reduced a claim for four hours of conferences between co-counsel discussing a motion for summary judgment to an award of one hour. No. CIV 13-0183, 2015 WL 403930, at *23 (D.N.M. Jan. 7, 2015). The court did not reduce the 26 hours one of the attorneys spent preparing a response to a motion for summary judgment. *Id.* In *Rhein v. McCoy*, the court reduced from 31 to 10 hours the time the defendant's counsel spent reviewing a response to a motion for summary judgment, drafting a reply, and drafting a motion for sanctions. No. 09-CV-02386 REB/MEH, 2011 WL 4345872, at *7 (D. Colo. Sept. 16, 2011). And in *McKenzie v. City of Ottawa, Kansas*, the court reduced from 61.2 to 43.2 the hours three attorneys spent drafting a response to a motion for summary judgment. No. CIV. A. 87-2153-O, 1989 WL 45392, at *2 (D. Kan. Apr. 24, 1989).

---

[5] The City also alleges that entries such as "draft summary-judgment materials," "continue drafting summary judgment motion," and "draft opposition to motion for summary judgment" are vague and non-compensable. (Doc. 158 at 10.) The Court disagrees. The United States Supreme Court has stated in dicta that an attorney "is not required to record in great detail how each minute of his time was expended[, b]ut . . . should identify the general subject matter of his time expenditures." *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983) (citation omitted). Plaintiffs' entries meet this standard.

Here, Plaintiffs' counsel spent 756.533 hours ($192,876.67) preparing, drafting, and arguing one opening brief (Doc. 89) and one reply brief (Doc. 116) on their own motion for summary judgment, three response briefs to the City's motions (Docs. 101–03), and a supplemental memorandum brief in support of their own motion (Doc. 130). Because the motions for summary judgment were cross-motions and involved the same issues, Plaintiffs' responses to the City's motions were somewhat duplicative of their own motion. The Court finds that Plaintiffs may be compensated for no more than 75 hours for each of the six briefs, which includes the time spent preparing, communicating with co-counsel, and arguing. This represents a 40.5% reduction in hours. Thus, the Court will reduce the dollar value requested by 40.5% or $78,115.05.[6]

The Court agrees that it is often proper for plaintiffs to be represented by a team of attorneys. Plaintiffs offer no authority, however, to support a finding that it is per se reasonable for multiple attorneys to bill for the amount of hours claimed here. Plaintiffs rely on *Nieto* to support their claims for conferences and collaboration, but in that case the court found that "it was reasonable for two or three attorneys to be present at a hearing or deposition" in a lawsuit where the "attorneys did not all represent the same plaintiffs." 2001 WL 37125028 at *10. Plaintiffs' counsel do not contend here that they were assigned to different plaintiffs. While there is no bright line to determine how many attorneys or hours are "too many," the Court finds that the reductions calculated above make Plaintiffs' fee request more reasonable.

The Court finds that reducing Plaintiffs' total requested amount of attorneys' fees ($440,367.50) by $45,122.26 (for the deposition-related work) and $78,115.05 (for the summary judgment motion-related work) results in an adjusted total of $317,130.19, or a 28% reduction from the requested total.

---

[6] This reduction is sufficient to account for the City's allegation that Plaintiffs claimed compensation for administrative tasks. (Doc. 158 at 11.)

## B.    Reasonable Hourly Rates

Plaintiffs request hourly rates as follows: $400/hour for Mr. Martin, a partner at Goodwin; $300/hour for Ms. Santos, a senior associate at Goodwin; $300/hour for Mr. Howard, Legal Director at the ACLU; $275/hour for Ms. Sánchez, Senior Staff Attorney at the ACLU; $250/hour for Mr. Cedrone, an associate at Goodwin; $250/hour for Mr. Topol, an associate at Goodwin; and $200/hour for Mr. Herbert, an associate at Goodwin. (Doc. 150 at 10.) The rates for the Goodwin attorneys, who are all based in either Boston or Washington, D.C., are all significantly reduced from their customary billing rates. (Doc. 150 at 5; 151-B ¶¶ 9–13.) Plaintiffs' counsel provides biographies and qualifications for each attorney. (*See* Docs. 151-B–G; 152.) Plaintiffs also submit a declaration from Albuquerque attorney Shannon Kennedy. (Doc. 151-I.) Ms. Kennedy, a partner at Kennedy Kennedy & Ives who has "extensive experience in the field of civil-rights law" and is "generally familiar with the issues involved in this case," believes that the "requested hourly rates are reasonable" for the Albuquerque market. (*Id.* ¶¶ 2, 8, 17.)

"To determine what constitutes a reasonable rate, the district court considers the prevailing market rate in the relevant community." *New Mexico v. Valley Meat Co., LLC*, No. CIV-14-1100 JB/KBM, 2015 WL 9703255, at *23 (D.N.M. Dec. 14, 2015) (quoting *Lippoldt v. Cole*, 468 F.3d 1204, 1224–25 (10th Cir. 2006)). "Plaintiffs must provide evidence of the prevailing market rate for similar services by lawyers of reasonably comparable skill, experience, and reputation in the relevant community." *Lippoldt*, 468 F.3d at 1224–25 (internal quotation marks and citations omitted). Here, Plaintiffs provide Ms. Kennedy's declaration affirming that the rates are reasonable, but the Court will also look at other cases from this district to determine appropriate hourly rates.

### 1.     Mr. Martin

The City contends that "[t]his district has determined that a $375 per hour fee 'approaches the upper end of what the local market would currently bear for the hourly rate of a very experienced partner engaged in complex, multi-party commercial litigation.'" (Doc. 158 at 11 (quoting *Fallen v. GREP Sw., LLC*, 247 F. Supp. 3d 1165, 1168 (D.N.M. 2017)).) Thus, the City asks for a rate of $350–$375/hour for Mr. Martin. (*Id.* at 13.) The Court notes that in 2019, United States Circuit Judge Joel M. Carson III, sitting by designation, awarded a $425/hour rate for an attorney who successfully litigated a § 1983 case. *Casias v. Dep't of Corr.*, No. 1:16-CV-00056 JMC/SCY, 2019 WL 2881007, at *5 (D.N.M. July 3, 2019). Opposing counsel did not contest the rate. *Id.* In 2018, United States District Judge James O. Browning awarded, over the defendants' objection, a $350/hour rate to "an expert in immigration law." *O Centro Espirita Beneficente Uniao Do Vegetal in U.S. v. Duke*, 343 F. Supp. 3d 1050, 1083 (D.N.M. 2018). The court noted there "that the hourly rates for some of the top civil rights attorneys in New Mexico are now over $400.00 per hour." *Id.* at 1067 (citation omitted). And in 2017, Senior United States District Court Judge James A. Parker awarded a $375/hour rate to an attorney who had "a well-deserved reputation for excellence in civil rights cases." *Chavez v. Chavez*, No. 13-CV-1047 JAP/SCY, 2015 WL 13662584, at *6 (D.N.M. Apr. 20, 2015) (quotation omitted). This rate was reduced from the attorney's requested rate of $425/hour. *Id.* at *5. Finally, the Court notes that Mr. Martin received an award of $400/hour in 2017 in another "pedestrian safety" ordinance case with facts very similar to this lawsuit. *See Thayer v. City of Worcester*, No. CV 13-40057 TSH, 2017 WL 1190366, at *3 (D. Mass. Mar. 29, 2017).

Considering Mr. Martin's experience and skill, the past awards in this district, and Ms. Kennedy's declaration, the Court finds that $400/hour is a reasonable rate in 2020 for an attorney

with Mr. Martin's experience and qualifications. To calculate Mr. Martin's total fee award, the Court reduces his claimed hours worked (89.9) by 28% (25.17) to reach a total of 64.73 hours, multiplied by $400, for a total of $25,892.

### 2. Ms. Santos, Mr. Howard, and Ms. Sánchez

Ms. Santos, who seeks $300/hour, is a 2011 graduate from Harvard Law School with nine years of experience. (Doc. 151-D at 4.) She has considerable experience litigating federal civil rights cases, having advocated before the Fourth, Seventh, and Ninth Circuits and the Supreme Court. (*Id.* at 2.) Mr. Howard, who seeks $300/hour, is a 2009 graduate of the University of New Mexico School of Law with 11 years of experience. (Doc. 152 ¶ 8.) He has extensive experience in civil rights litigation and has been Legal Director of the ACLU of New Mexico for two years. (*Id.*) Ms. Sánchez, who seeks $275/hour, is a 2008 graduate from the University of New Mexico School of Law with 12 years of experience. (*Id.* ¶ 10.) She has extensive experience litigating federal civil rights cases before this Court and New Mexico state courts. (*Id.*) The City does not seek to reduce Mr. Howard's requested hourly rate. (*See* Doc. 158.) It does ask the Court to reduce the hourly rates requested for Ms. Santos and Ms. Sánchez to $200–$225/hour, which is more in line with "the local rate for experienced associates." (Doc. 158 at 13 (citing *XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *2 (D.N.M. Apr. 1, 2016)).) But in *XTO Energy*, the court quoted to a 2012 opinion from this district that opined, "$200.00 per hour is a 'relatively low rate' for attorneys in New Mexico."  2016 WL 1730171, at *32 (quoting *Lane v. Page*, 862 F. Supp. 2d 1182, 1257 (D.N.M. 2012)).

The Court finds guidance in several civil rights cases. In *O Centro Espirita*, the court awarded $200/hour to an attorney with 3 years of experience. 343 F. Supp. 3d at 1095. In *Valley Meat Co.*, 2015 WL 9703255, at *23, the court found that $200.00 was a reasonable hourly rate

for an attorney with 13 years of experience who worked solely on a motion to remand. In *Ysasi*, 2015 WL 403930, at \*4, the attorneys requested and the court awarded $300/hour to an attorney who had practice for over 50 years, but who did not regularly litigate § 1983 claims; and $250/hour to an attorney with 34 years of experience. Outside of civil rights litigation, courts in this district have awarded fees as follows. In *Baity v. Brad Hall & Associates*, 18-cv-0183, 2019 WL 2436262, at \*2 (D.N.M. June 11, 2019), the court awarded $300 per hour to an attorney with 16 years of experience. In *Copar Pumice Co., Inc. v. Morris*, No. CIV 07-0079 JB/ACT, 2012 WL 2383667, at \*21 (D.N.M. June 13, 2012), the court awarded $235/hour for partners, $200/hour for senior associates, and $150/hour for other associates. Finally, in *Thayer*, the lawsuit with facts similar to this case, the court awarded a "mid to senior level attorney" $250/hour. 2017 WL 1190366, at \*3.

Considering these cases, the Court's own knowledge of the market, and the experience of Ms. Santos and Ms. Sánchez, the Court finds it appropriate to award a rate of $275/hour to both. To calculate Ms. Santos's total fee award, the Court reduces her claimed hours worked (311.5) by 28% (87.22) to reach a total of 224.28 hours, multiplied by $275, for a total of $61,677. For Ms. Sánchez, the Court reduces her claimed hours worked (90.9) by 28% (25.45) to reach a total of 65.45 hours, multiplied by $275, for a total of $17,998.75. And for Mr. Howard, the Court reduces his claimed hours worked (23.7) by 28% (6.64) to reach a total of 17.06 hours, multiplied by $300, for a total of $5,118.

### 3. Mr. Cedrone, Mr. Topol, and Mr. Herbert

Mr. Cedrone, who seeks $250/hour, is a 2014 graduate from Harvard Law School with 6 years of experience. (Doc. 151-E at 1.) Mr. Topol, who seeks $250/hour, is a 2016 graduate from the University of Michigan Law School with 4 years of experience. (Doc. 151-F at 1.) The City asks the Court to reduce the hourly rates requested for both to $175–$200/hour, "to reflect their

few years of experience . . . ." (Doc. 158 at 13.) Mr. Herbert, who seeks $200/hour, is a 2018 graduate from Suffolk University Law School with two years of experience. (Doc. 151-G at 1.) The City asks the Court to reduce his hourly rate to $160/hour. (Doc. 158 at 13.)

Again, in *O Centro Espirita*, the court awarded $200/hour to an attorney with 3 years of experience. 343 F. Supp. 3d at 1095. In *Tenorio*, 2019 WL 2617998, at *2, the court awarded $225 per hour to an attorney with 4 years of experience. And in *Thayer*, the court awarded "mid-level associates" $225/hour, and "junior level associates" $200/hour. 2017 WL 1190366, at *3.

The Court finds that $250/hour is appropriate for Mr. Cedrone, $225/hour is appropriate for Mr. Topol, and $175/hour is appropriate for Mr. Herbert. To calculate Mr. Cedrone's total fee award, the Court reduces his claimed hours worked (364.3) by 28% (102.00) to reach a total of 262.3 hours, multiplied by $250, for a total of $65,575. For Mr. Topol, the Court reduces his claimed hours worked (597.7) by 28% (167.36) to reach a total of 430.34 hours, multiplied by $225, for a total of $96,826.50. For Mr. Herbert, the Court reduces his claimed hours worked (191.3) by 28% (53.56) to reach a total of 137.74 hours, multiplied by $175, for a total of $24,104.50.

In total, the Court awards a total of $297,191.75 in attorneys' fees.

## C. Upward or Downward Adjustment

"If . . . a plaintiff has achieved only partial or limited success," the court may reduce any fee "award to account for the limited success." *Hensley*, 461 U.S. at 436–37. The City asks the Court to further adjust the award downward because Plaintiffs did not succeed in having subsection (A) of the ordinance stricken, and because the Court did not grant Plaintiffs' motion based on every argument they raised. (Doc. 158 at 13–16.) The Court disagrees that Plaintiffs' success was limited. Five subsections of the ordinance failed intermediate scrutiny. And as Plaintiffs point out,

"[t]he City Council amended Subsection (A) the day before the summary-judgment hearing . . . without going through the usual legislative process." (Doc. 162 at 9 (citation omitted).) Because Plaintiffs "achieve[d] most or all of what [they] aimed for[,]" their attorneys "should receive 'a fully compensatory fee.'" *Robinson*, 160 F.3d at 1283 (quoting *Hensley*, 461 U.S. at 435). The Court will not reduce the award on this basis.

## II. Costs

Plaintiffs also seek $7,107.47 in costs to cover the Court's filing fees and court reporter/transcript fees. (Doc. 150 at 12.) The Tenth Circuit has held "that '[i]tems that are normally itemized and billed in addition to the hourly rate should be included in fee allowances in civil rights cases if reasonable in amount.'" *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000) (quoting *Ramos*, 713 F.2d at 559) (subsequent citation omitted). The City does not dispute that Plaintiffs should be reimbursed for the filing fees or for the court reporter/transcript fees for the depositions of Mr. Burke, Ms. Jones, Mr. Sanchez, Mr. Melendrez, Deputy Chief Medina, Mr. Lewis, and Ms. Brewer. (Doc. 158 at 17.) The City argues, however, that the Court should deny compensation for the remaining seven depositions. (*Id.* at 17–18.)

Under Local Rule 54.2(b)(2), the Court may award deposition costs where the depositions were "reasonably necessary to the litigation . . . ." D.N.M. LR-Civ. 54.2(b)(2). The Rule provides:

A deposition is reasonably necessary to the litigation when:

(A)      a substantial portion of the deposition is admitted into evidence or used at trial for impeachment purposes;

(B)      the deposition is used by the Court in ruling on a motion for summary judgment; or

(C)      the Court so determines.

*Id.* 54.2(b)(2)(A)–(C). The City contends that the remaining seven depositions were not necessary because the Court did not reference them in its decision on the parties' motions for summary

judgment. (Doc. 158 at 17–18.) Plaintiffs respond that while the Court did not refer to the depositions, the Court may still award costs if it "so determines." (Doc. 162 at 11 (quoting D.N.M. LR-Civ. 54.2(b)(2)(C)).) This Rule "gives the Court wide discretion to determine when a deposition is reasonably necessary . . . ." *Billy v. Curry Cty. Bd. of Cty. Comm'rs*, No. 2:13-CV-0032 MCA/LAM, 2015 WL 12990789, at *2 n.3 (D.N.M. Sept. 11, 2015). Further, the Tenth Circuit has "specifically instruct[ed] that under 28 U.S.C. § 1920, which also requires costs be reasonably necessary to the litigation, a deposition need not be relied on in the determination of a motion for summary judgment for the prevailing party to award costs." *See id.* (discussing *In re Williams Sec. Litig.*, 558 F.3d 1144, 1149 (10th Cir. 2009)). Here, Plaintiffs cited "*all* of the disputed transcripts" in their opening brief "or in briefing the Court specifically requested." (Doc. 162 at 11 (citing Doc. 151 ¶ 14).) Thus, the Court finds that the depositions were reasonably necessary to the litigation and will award the full amount of costs requested.

      **THEREFORE,**

      **IT IS ORDERED** that Plaintiffs' Motion for Award of Attorneys' Fees and Litigation Expenses (Doc. 149) is **GRANTED IN PART**. The Court awards $297,191.75 in attorneys' fees and $7,107.47 in costs for a total award of $304,299.22.

                                     _____
                                     ROBERT C. BRACK
                                     SENIOR U.S. DISTRICT JUDGE